<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANNA MAY FARINICK,

    Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Appellee.

Civ. No.  09-3234 (DRD)

**O P I N I O N**

*Appearances by:*

GREGG M. HOBBIE, ESQ.
Main Office Executive Suites
12 Christopher Way, Suite 200
P.O. Box 997
Eatontown, NJ 07724

  *Attorney for Appellant*

PAUL J. FISHMAN
United States Attorney for the District of New Jersey
by: Vernon Norwood
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278

  *Attorney for Appellee*

**<u>DEBEVOISE, Senior District Judge</u>**

  Appellant Anna May Farinick seeks review pursuant to section 205(g) of the Social

Security Act ("the Act"), 42 U.S.C. § 301, <u>et. seq.</u>, of the Commissioner of Social Security's

("Commissioner") final determination that she is not disabled, and therefore not entitled to Disability Insurance Benefits ("DIB"). Appellant argues that the Administrative Law Judge ("ALJ") presiding over the adjudication below erred by finding that her multiple sclerosis does not constitute a "severe" impairment that significantly limits her ability to perform basic work activities. Additionally, Appellant contends that the ALJ violated applicable regulations by (1) rejecting the medical opinions of her treating physician without giving any reason for doing so, (2) not affording proper weight to the medical opinions of a consultant employed by the New Jersey Division of Disability Services and (3) rejecting her subjective testimony based on a conclusory finding that it was not credible. Because the Court finds that the ALJ's decision was supported by substantial evidence, the Commissioner's determination will be affirmed.

## I. BACKGROUND

Appellant suffers from multiple sclerosis, which she contends rendered her unable to work beginning on May 1, 2001.[1] Prior to that date, she was employed as a temporary office worker in the credit and collections department of a chemical company. As her multiple sclerosis grew more severe, however, she claims that it became impossible for her to maintain the necessary concentration to perform her duties.

On May 9, 2006,[2] Appellant filed an application to the Social Security Administration seeking DIB. See (R. at 52-54.) Following the denial of both her initial application and a

---

[1] In her written application for Disability Insurance Benefits, Plaintiff asserted that she became unable to work due to her disability on December 31, 1996. (R. at 52.) At her ALJ hearing, however, she amended that date to May 1, 2001. (R. at 182.) Appellant also referred to that date as the beginning of her disability in her papers relating to this appeal. (Appellant's Br. 2.) Therefore, the Court will use May 1, 2001 as the onset date of Appellant's claimed disability.

[2] Both parties misstate the date of Appellant's initial application in their papers. The Commissioner asserts that her application was filed on February 16, 2006, (Appellee's Br. 1), while Appellant contends it was filed on May 15, 2006. (Appellant's Br. 1.)

subsequent request for reconsideration, Appellant requested a hearing before an ALJ as provided for by 20 C.F.R. 404.929.  (R. at 12.)

Appellant's initial ALJ hearing took place on June 4, 2008.[3]  At that hearing, Appellant testified that she has difficulty maintaining her balance and that her left leg drags when she walks, which often causes her to trip and fall.  (R. at 186.)  She noted that she walks with a cane.  (R. at 189.)  Appellant stated that she cannot stand for more than 10 minutes at a time, and cannot sit for extended periods because doing so causes her legs to go numb.  (R. at 188.)  She testified that her condition makes it impossible for her to lift more than five pounds, (R. at 189), and that it has rendered her unusually sensitive to heat.  (R. at 186.)

Regarding her medical history, Appellant testified that she was diagnosed with multiple sclerosis in July 1995.  (R. at 184.)  She admitted that she has never been hospitalized for that condition, (R. at 185), and that she has not engaged in physical therapy or any other form of treatment beyond medication.  (R. at 186.)  Other than visiting the emergency room on two occasions following mild seizures – which in both cases appeared to be caused by the medicine used to treat her condition and did not lead to any discernible neurological damage (R. at 187-88) – Appellant's medical treatment during her claimed period of disability was limited to semiannual checkups.  (R. at 186.)

---

[3] As noted by the ALJ, Appellant filed an earlier request for Disability Insurance Benefits on September 13, 2004.  That request was denied at the administrative level, and Appellant did not seek further review.  Because it was unclear what medical evidence was included in Appellant's first application, the ALJ below chose not to deny her claim on the grounds that it was barred by res judicata – giving her a second chance to demonstrate her eligibility for Disability Insurance Benefits. (R. at 12.)  In doing so, the ALJ acted within his discretion as a representative of the Commissioner to waive res judicata and consider the merits of Appellant's claim.  Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999) ("[T]he Commissioner has discretion whether to reopen a prior disability benefits application for 'good cause' within four years of the date of notice of the initial determination.… [A] reopening will be found when there is an administrative review of the entire record and a decision is reached on the merits of the claim.").

In addition to her hearing testimony, Appellant presented a Medical Source Statement ("MSS") completed by Dr. Stuart Cook, the physician who treated her condition beginning in 1997. In that statement, which was dated May 5, 2008, Dr. Cook opined that Appellant was incapable of performing either light or sedentary work during the period of her claimed disability. (R. at 157-158.) He stated that she suffered from "moderately severe" impairments – defined by the MSS as "preclud[ing] the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week" – of her ability to (1) "maintain attention and concentration for extended periods;" (2) "perform activities within a schedule, maintain regular attendance and be punctual;" and (3) "complete a normal workday and workweek without interruptions" and "perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 159.) Dr. Cook stated that Appellant was unable to sit for more than one hour at a time, could not stand for any significant period, and could walk for less than an hour. (R. at 160.) He asserted that she was unable to lift or carry five pounds, and could not reach or "handle" – meaning "grasping, turning, or otherwise working with the hands." (R. at 161.) Finally, Dr. Cook claimed that Appellant is unable to stoop, kneel, or crouch for any period of time. (R. at 162.) Appellant also submitted various records of her treatment by Dr. Cook that she claimed supported the conclusions contained in the MSS. See (R. at 119-142.)

As another exhibit at her ALJ hearing, Appellant introduced a Physical Residual Functional Capacity Assessment ("RFC Assessment") completed by a representative of the New Jersey Division of Disability Services on January 5, 2005. See (R. at 143-50.) That report included some findings that supported the conclusions relating to her purported disability contained in Dr. Cook's MSS. Other findings contained in the RFC, however, directly contradicted Dr. Cook's conclusions. For instance, the RFC stated that Appellant walked using a

4

cane during an examination on September 13, 2002, but that she was able to walk unaided during a subsequent visit on January 23, 2003. (R. at 144.) Additionally, the RFC echoed Dr. Cook's conclusions that Appellant had difficulty maintaining her balance, but stated that her condition did not preclude "frequent" stooping, kneeling, crouching, and crawling. (R. at 145.) Similarly, the RFC stated that there were "no limitations" on Appellant's ability to reach in any direction or handle objects. (R. at 146.) In assessing Appellant's communicative and visual abilities – two areas not addressed by Dr. Cook's report – the RFC also found "no limitations." (R. at 146-47.) In fact, it specifically stated that, while Appellant had previously been "described as dysarthric," there was "no evidence in [her] file regarding the intelligibility of her speech." (R. at 147.) In direct contradiction of Dr. Cook's findings, the RFC stated that Appellant was capable of occasionally lifting loads of up to 20 pounds, and could frequently lift 10 pounds or less. (R. at 144.) In another finding that cannot be reconciled with Dr. Cook's report, the RFC stated that Appellant could stand or walk for a maximum of two hours per day, and could sit for an additional six hours during an eight-hour workday. Compare (R. at 144) (RFC report) with (R. at 160) (Dr. Cook report stating that Appellant was unable to sit for more than one hour at a time, could not stand for any significant period, and could walk for less than an hour.) The RFC did state, however, that Appellant had suffered from seizures and was seen in an emergency room in January 2002. (R. at 144.) That finding appears to be based on Dr. Cook's treatment notes from January 18th of that year, in which he stated that Appellant had suffered mild seizures due to her medication. (R. at 129.) Later treatment notes indicated that her seizures were controlled by a change in her prescription, (R. at 124), and Appellant testified to that fact during her ALJ hearing. (R. at 187-88) (stating that there had been "no recurrence" since 2001.)

5

The ALJ denied Appellant's claim for DIB in a ruling dated June 13, 2008. In doing so, he noted as a preliminary matter that Appellant was last insured on December 31, 2002, and therefore her condition must have rendered her unable to work prior to that date for her to be eligible for DIB.[4] See 42 U.S.C. § 423(a)(1)(A) (setting forth the requirement that an individual be insured under the social security program at the time his or her disability arises in order to be eligible for DIB); 20 C.F.R. § 404.101 (elaborating on that requirement). The ALJ then proceeded with the five-step inquiry applicable to disability claims, which is described in detail below. See infra at II(A); 20 C.F.R. 404.1520(a)(4) (describing the five-step inquiry).

The ALJ found that, since Appellant had not engaged in "substantial gainful activity" since the onset of her alleged disability, she satisfied step one of the five-step inquiry. (R. at 12) (citing 20 C.F.R. 404.1520(b).) However, he ruled that Appellant failed step two because, while her multiple sclerosis was a medically-determinable impairment recognized under the Act, that impairment was not "severe" – meaning that it did not significantly limit her ability to perform basic work-related activities for a period of more than 12 months. (R. at 12) (citing 20 C.F.R. §§ 404.1520(c), 404.1521.) Therefore, the ALJ held that Appellant was ineligible for DIB and did not continue to steps three through five of the five-step inquiry. (R. at 17.)

In ruling that her claimed impairment was not "severe," the ALJ rejected Appellant's subjective testimony regarding her condition on the grounds that it was rebutted by the objective medical evidence – namely, the treatment notes from her visits to Dr. Cook before the date on which she was last insured, December 31, 2002. See (R. at 15-16.) The ALJ cited several examples of inconsistencies between Appellant's testimony and her medical records, stating:

> Evidence in the record prior to the claimant's date of last insured is treatment records from Dr. Cook, at University Hospital. In March 1996, when the claimant was 7 months pregnant, there is no indication that she carried a diagnosis of

---

[4] Appellant does not challenge the ALJ's ruling that she was last insured on December 31, 2002.

6

> multiple sclerosis (MS). However, there were no follow-up visits from March 1996 to October 1998 when the claimant began 6-month follow-up visits. Treatment notes on October 26, 1998 indicate that she has been maintained on [prescription medications] for two years and that her condition was stable. She had mild ataxia in gait but she had good strength and ambulated unaided. Doctor notes indicate "no physical limitations." Follow-up notes through December 31, 2002 reveal that her MS was stable throughout this period. She had [a] mildly ataxic gait but she was able to ambulate unaided. While treatment notes indicate some acute symptoms, these symptoms were transient and were not constant. For instance, notes on July 24, 2000 indicate twitching in the left eye, but by follow-up visit on January 18, 2001, the twitching had resolved. There is no evidence of any neurological involvement and extremity strength has been normal throughout. Treatment notes on September 13, 2002 indicate that she ambulated with a cane but by January 12, 2003, she was ambulating unaided. For the entire period prior to the claimant's date last insured the claimant had a mildly increased tone in the right leg and a mildly ataxic broad-based gait, but she ambulated without aide and no physical limitations or restrictions were indicated by her treating physician. It was noted that she was independent in activities of daily living. MS remained stable with medication for this entire period.

(R. at 16.)

Additionally, the ALJ pointed to inconsistencies in Appellant's own statements, including the fact that she "testified that she used a cane in 2000 while working," but stated "in a disability report dated April 12, 2005 … that '<u>lately</u> it has become difficult to go around without use of my cane.'" (R. at 16) (emphasis added)

The ALJ rejected Dr. Cook's MSS and the RFC prepared by the New Jersey Division of Disability Services for similar reasons. With respect to the former, he stated:

> I give no weight to the medical source statement dated May 4, 2008, completed by Dr. Cook's assistant.[5] This statement indicates that the claimant was not

---

[5] The MSS was not signed by Dr. Cook, but rather by his assistant, an Advanced Practice Nurse. <u>See</u> (R. at 162.) Based on that fact, the Commissioner argues that the MSS must be rejected. (Appellee's Br. 10 (Dr. Cook's assistant "is not a doctor and, thus, he is not an acceptable medical source and his assertion is not entitled to deference.") Appellant takes issue with that contention, referring to it as "disingenuous." (Appellant's Reply Br. 1.) As discussed below, the Court finds that the ALJ acted within his discretion by rejecting the testimony contained in the MSS based on the fact that its substance conflicted with Dr. Cook's earlier medical reports. The ALJ's ruling had nothing to do with who prepared the MSS. Therefore, the parties' recriminations relating to whether that report should have been given less weight due to the fact that it was signed by Dr. Cook's assistant need not be addressed.

7

> capable of performing sustained sedentary or light work. It indicates that she can sit up to 1 hour[]; stand less than 1 hour; and no standing at one time. It further states that she is unable to lift and carry any weight and that she has moderately severe limitations in her ability to maintain attention/concentration; maintain a schedule; or complete[] a normal work week and that such has been the circumstance for the past 7 years.
>
> This medical source statement was completed 5 ½ years after the claimant's date last insured expired and contradicts Dr. Cook's objective treatment notes through, at least, December 2002, which indicate[] that her medical condition was stable and that she had no physical limitations and was independent in her activities of daily living.

(R. at 16.)

Similarly, the ALJ stated with respect to the RFC that:

> While [a] state agency medical consultant assessed that the claimant was limited to standing and walking up to 2 hours only in an 8 hour workday; and that she was limited to lifting and carrying up to 10 pounds frequently and 20 pounds occasionally, these limitations are not borne out by objective evidence and cannot be accorded any weight.
>
> The evidence does not establish that through December 31, 2002 that the claimant had limitations or restrictions having more than a minimal effect on her ability to do basic work activities.

(R. at 16.)

After the ALJ denied her claim, Appellant sought relief from the Appeals Council. On June 18, 2009, however, the Appeals Council denied her request for review. (R. at 4-6.) Thus, the ALJ decision became the final determination of the Commissioner. 20 C.F.R. § 410.666.

## II. DISCUSSION

Pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Appellant asks this Court to reverse the Commissioner's determination that she is not disabled and therefore not entitled to Disability Insurance Benefits. In support of her petition, Appellant contends that the ALJ's decision was not supported by substantial evidence. Specifically, she argues that the ALJ failed to correctly apply what she characterizes as the "slight abnormality" standard. <u>See</u>

(Appellant's Br. 2.)  Under that standard, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (internal quotations and citations omitted).  "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits at step two" of the five-step inquiry discussed below.  Id.  Thus, in asserting that the ALJ wrongly applied the "slight abnormality" standard, Appellant essentially contends that he erred by concluding that her multiple sclerosis is not a "severe" impairment.

In a secondary argument, Appellant contends that the ALJ violated applicable regulations by excluding testimony relating to the severity of her impairment.  Specifically, she claims that the ALJ's ruling that her testimony was not credible was "conclusory" and failed to properly apply the criteria for evaluating medical symptoms contained in 20 C.F.R. § 404.1529.  (Appellant's Br. 2.)  Additionally, Appellant argues that "[t]he ALJ violated 20 C.F.R. § 404.1527 by failing to provide any reasons whatsoever for his rejection of … Dr. Cook's" MSS.  (Id.)  Finally, she claims that the ALJ's rejection of the RFC report prepared by the New Jersey Division of Disability Services was wrongful, arguing that 20 C.F.R. § 404.1527(f) requires the consideration of such reports.  (Id.)

**A.  Standard of Review**

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case.  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  A district court's review of the Commissioner's factual findings, however, is deferential and limited to determining whether the conclusions are supported by substantial evidence.  42 U.S.C.

9

§ 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently."). However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below. Substantial evidence consists of "more than a mere scintilla" of support for a determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The standard of review applicable to the Commissioner's decisions regarding the probative value of testimony is similarly deferential. An ALJ representing the Commissioner must consider all relevant evidence when determining whether an individual is disabled. See 20 C.F.R. 404.1527. "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). However, an ALJ may reject a claimant's testimony if he finds that it is not credible because it conflicts with objective medical evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999). Similarly, "when [expert] medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In doing so, an ALJ must engage in a "thorough discussion and analysis" of the any conflicts between the various reports and testimony, and articulate his reasons for refusing to credit testimony by the claimant or medical experts. Schaudeck, 181 F.3d at 433 (internal quotations and citations omitted).

**B.  Determination of Disability**

10

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a)(4). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity.* The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(i).

*Step 2: Severity of Impairment.* If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits the individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or does not meet the 12 month

11

durational requirement, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

*Step 4: Past Relevant Work.* If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his or her "past relevant work," meaning the individual's prior job or a similar occupation. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his or her impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ finds that the individual has the capacity to perform past relevant work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

*Step 5: Adjustment to Other Work.* If the claimant cannot perform past relevant work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he

applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of performing gainful employment other than his past relevant work and that such jobs exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## C. The Commissioner's Findings and Conclusions

As discussed above, the ALJ in this case ruled at step two that Appellant's impairment was not severe. That ruling was supported by substantial evidence and will be affirmed. Appellant's first argument – that the ALJ erred in ruling that her impairment was not severe – is dependent on her contention that her testimony should have been credited and that Dr. Cook's MSS and the RFC prepared by the New Jersey Division of Disability Services should not have been rejected. She claims that "all of the medical evidence agreed that the claimant had a severe impairment," (Appellant's Br. 6), and cites the aforementioned testimony and reports as support for that proposition.

There is a great discrepancy between the reports cited by Appellant and the objective medical evidence relied on by the ALJ in his ruling. That discrepancy is explained, at least in part, by the fact that the evidence on which Appellant relies was prepared long after the date on which she was last insured, December 31, 2002. Pursuant to 42 U.S.C. § 423(a)(1)(A), Appellant was required to demonstrate that her impairment was "severe" prior to that date in

13

order to be eligible for DIB.  The MSS was dated May 5, 2008.  The ALJ specifically acknowledged that time lag in his decision, stating that the MSS was of limited probative value because it "was completed about 5 ½ years after the claimant's date last insured."  (R. at 16.)  Similarly, the RFC was completed on January 5, 2005, three years after the relevant date.  While the RFC purports to be based on an examination of Appellant's medical records from before December 31, 2002, it is likely that its conclusions were colored by the worsening of her symptoms that occurred after that date.  Appellant's own testimony – during which she referred to her various maladies in the present tense – suffers the same deficiency.  In short, all of the evidence relied on by Appellant – her testimony, the MSS, and the RFC – supports the conclusion that her condition has deteriorated significantly since December 31, 2002.  While that deterioration is unfortunate and may have rendered her impairment "severe" at some point between that date and the present, it cannot form the basis of eligibility for DIB.  42 U.S.C. § 423(a)(1)(A).  Thus, the ALJ was correct to limit his inquiry to developments which occurred to before December 31, 2002.  Taking that limitation into account, the Court will examine the propriety of the ALJ's decision to reject Appellant's testimony, Dr. Cook's report, and the RFC before turning to his ultimate conclusion that Appellant's impairment was not severe.

   *i.*  *Appellant's Testimony*

Appellant contends that "[i]t is difficult if not impossible to understand any rational basis whatsoever for the ALJ's credibility determination" rejecting her testimony.  (<u>Id.</u> at 10.)  But as the ALJ's ruling made abundantly clear, there were material conflicts between Appellant's testimony and the objective medical evidence contained in Dr. Cook's treatment notes.  The ALJ specifically cited the following examples:

    (1) Appellant testified that she was diagnosed with multiple sclerosis in July 1995, (R. at 184), but treatment notes from a visit to Dr. Cook in March 1996 gave no indication of that diagnosis. (R. at 142.)

    (2) Appellant did not visit Dr. Cook for any further treatment between March 1996 and October 1998 – thus implying that her condition was not sufficiently severe to motivate her to seek medical attention during that period. See (R. at 142) (notes from March 7, 1998 appointment); (R. at 141) (notes from October 26, 1998 appointment.)

    (3) Appellant testified that she could not walk without a cane, (R. at 189), could not stand for more than 10 minutes at a time, (R. at 188), and could not lift more than five pounds, (R. at 189), but Dr. Cook's treatment notes from her October 1998 examination indicate that she had "no physical limitations." (R. at 141.) In fact, Dr. Cook's notes for each of Appellant's appointments from October 1998 until after December 31, 2002 – the date on which she was last insured – specifically stated that her condition was "stable" and that she could walk "unaided." (R. at 141) (October 1998 appointment notes); (R. at 140) (July 1999 appointment notes); (R. at 136) (January 2000 appointment notes); (R. at 133) (July 2000 appointment notes); (R. at 132) (January 2001 appointment notes); (R. at 130) (July 2001 appointment notes); (R. at 129) (January 2002 appointment notes); (R. at 127) (September 2002 appointment notes); (R. at 124) (January 2003 appointment notes.)

See (R. at 16.)

Based on those inconsistencies, which undercut Appellant's main thesis – that her multiple sclerosis had rendered her unable to walk unaided, sit for extended periods of time, or engage in other basic work activities – the ALJ was more than justified in rejecting her testimony on the

15

grounds that it was not credible. Indeed, the pervasive extent to which Appellant's testimony was contradicted by the objective medical evidence all but required such a holding.

### ii.     *Dr. Cook's MSS*

The ALJ was similarly justified in his decision to reject Dr. Cook's MSS. The treatment notes discussed above specifically contradict the conclusions contained in that report. The MSS stated that Appellant was unable to sit for more than an hour, could not stand for any significant period of time, and could walk for less than an hour. (R. at 160.) As noted by the ALJ, however, Dr. Cook's treatment notes for each of Appellant's examinations between October 1998 and January 2003 stated that she could walk "unaided." (R. at 124, 127, 129, 130, 132, 133, 136, 140, 141.) Those notes also stated on several occasions during the period that she claimed she was disabled that Appellant was "independent" in her "activities of daily living." (R. at 124) (January 2003); (R. at 127) (September 2002.) Finally, at least two reports during her period of claimed disability rated her "strength" as "5/5," thus undercutting the MSS's claim that she was unable to lift or carry five pounds and could not "reach" or "handle." Compare (R. at 161) (MSS) with (R. at 129) (January 2002 treatment notes); (R. at 127) (September 2002 treatment notes.)

Appellant argues in connection with this appeal that "the ALJ failed to provide a sufficient basis for his" rejection of Dr. Cook's MSS. (Appellant's Br. 7.) In doing so, she goes so far as to argue that "the ALJ did not point to one piece of medical evidence that contradicted Dr. Cook's statements and findings." (Id. at 8.) Even a cursory examination of the ALJ's ruling reveals the falsity of that allegation. The ALJ specifically noted the contradictions discussed above in his decision, stating that the MSS "contradict[ed] Dr. Cook's objective treatment notes through, at least, December 2002, which indicate[] that her medical condition was stable and that

she had no physical limitations and was independent in her activities of daily living."[6] (R. at 16.) In fact, his rejection of Dr. Cook's testimony appeared in a paragraph that directly followed two others in which he discussed the substance of the treatment notes at length. See (R. at 16.) Thus, his ruling that the MSS was inconsistent with those notes was supported by specific examples. In light of those examples, which reveal the irreconcilable differences between the MSS and Dr. Cook's treatment notes, Appellant's contention that the ALJ erred by refusing to credit the MSS is unavailing.

  *iii.*  **The RFC**

The same medical evidence cited by the ALJ in rejecting Appellant's testimony and Dr. Cook's MSS justified his decision not to credit the RFC prepared by the New Jersey Division of Disability Services. As explained by the ALJ, see (R. at 16), the RFC stated that Appellant could stand or walk for no more than two hours and that she could not carry more than 10 pounds on a frequent basis or 20 pounds occasionally. (R. at 144.) In contrast, Dr. Cook's treatment notes stated that she had "no physical limitations," (R. at 141), and that could walk "unaided," (R. at 124, 127, 129, 130, 132, 133, 136, 140, 141), and rated her strength as "5/5." (R. at 127, 129.)

Even if the ALJ had credited the RFC, the conclusions contained in that report would not have required a finding that Appellant's impairment was "severe." To the contrary, the RFC stated that Appellant was capable of performing various "basic work activities." See 20 C.F.R. § 404.1521(b)(1) (defining "basic work activities" to include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "[c]apacities for seeing, hearing, and speaking."). The RFC stated that Appellant was able to

---

[6] Although the ALJ did not say so in his ruling, Dr. Cook's MSS also materially conflicts with the RFC prepared by the New Jersey Division of Disability Services. For example, the former stated that Appellant could not stoop, kneel, crawl, or crouch, (R. at 162), while the latter found she could engage in those activities "frequently." (R. at 145.)

17

walk unaided. (R. at 144.) In fact, it found that she could stand for up to two hours and sit for an additional six – a finding that would not preclude her ability to perform light or sedentary work for an eight-hour period. (R. at 144.) It asserted that her impairment did not preclude "frequent" stooping, kneeling, crouching, and crawling. (R. at 145.) It found "no limitations" on her ability to reach or handle or her visual acuity. (R. at 146-47.) It stated that she could frequently lift up to 10 pounds and could occasionally handle loads of 20 pounds. (R. at 144.) Finally, the RFC stated that there was no evidence that Appellant's speech was impaired by her condition. (R. at 147.) In light of those findings, acceptance of the RFC into evidence would only have bolstered the ALJ's conclusion that Appellant was not disabled. Therefore, the Court rejects Appellant's contention in connection this appeal that the Commissioner's determination should be reversed due to the ALJ's refusal to accept the RFC.

      *iv.*     *The ALJ's Ultimate Conclusion*

Having ruled that the ALJ was justified in rejecting Appellant's testimony, Dr. Cook's MSS, and the RFC, the Court finds that his ultimate conclusion – that Appellant's multiple sclerosis did not constitute a "severe" impairment prior to the date on which she was last insured, December 31, 2002 – was supported by substantial evidence in the record. As discussed above, Dr. Cook's treatment notes from Appellant's appointments prior to December 31, 2002 repeatedly stated that her multiple sclerosis was "stable" and was being controlled with medication, that she had no physical limitations, and that she could walk unaided. That objective medical evidence provides much "more than a mere scintilla" of support for the ALJ's ruling, Richardson, 402 U.S. at 401, and requires this Court to affirm his judgment. Hartranft, 181 F.3d at 360.

## III.  CONCLUSION

For the foregoing reasons, the Commissioner's determination that Appellant was not disabled within the meaning of 42 U.S.C. § 423(d) prior to December 31, 2002 – the date on which she was last insured – is affirmed.

The Court will enter an Order implementing this Opinion.


       **s/ Dickinson R. Debevoise**_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: September 27, 2010